IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CEASAR R. BANKS,

                                                                                  OPINION AND ORDER

                    Plaintiff,

                                                                                   09-cv-098-bbc

     v

CAPTAIN KARTMAN,
LIEUTENANT R. SKIME,
K. SOLOMON, CAPTAIN
HESSELBERG and C. MORRISON,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a civil action for monetary and declaratory relief brought under 42 U.S.C. § 1983. Plaintiff contends that his rights under the due process and equal protection clauses of the Fourteenth Amendment were violated by defendants Captain Kartman, Lieutenant R. Skime and K. Solomon during his disciplinary proceeding and by defendants Captain Hesselberg and C. Morrison during his program review proceedings. Now before the court is defendants' motion for summary judgment. Dkt. #128.

A few preliminary matters deserve mention. First, in opposing defendants' motion for summary judgment, plaintiff has submitted his own proposed findings of fact, dkt. #148,

1

but failed to support them with admissible evidence in violation of this court's <u>Procedure To Be Followed on Motions for Summary Judgment</u>, which was attached to the June 15, 2009 Preliminary Pretrial Conference Order. Dkt. #75 at 17. Accordingly, his proposed findings of fact will not be considered. However, I will consider plaintiff's response to defendants' proposed findings of fact because he has supported it with citations to his affidavit.

Second, the parties dispute whether plaintiff has exhausted his administrative remedies. For the purpose of deciding defendants' motion for summary judgment, I will assume that he has and decide this case on its merits. I conclude that because plaintiff has failed to adduce sufficient evidence from which a reasonable jury could find that defendants denied him due process or equal protection, defendants' motion for summary judgment must be granted.

For the purpose of deciding this motion, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. The Parties

Plaintiff Ceasar Banks is an African-American inmate who is incarcerated at the Racine Correctional Institution in Sturtevant, Wisconsin. At all times material to this action, he was an inmate at the Prairie du Chien Correctional Institution in Prairie du

Chien, Wisconsin. Defendants are employed at Prairie du Chien Correctional Institution: Mark Kartman and Tonja Hesselberg are correctional captains; Richard Skime is a supervising officer; Karen Solomon is a security program assistant; and Christa Morrison is an offender classification specialist.

### B. Disciplinary Proceedings

Defendant Kartman investigated a November 16, 2008 incident in which plaintiff and inmate Rodney Sabatke were involved. Kartman issued plaintiff conduct report number 1944617, charging plaintiff with battery in violation of § DOC 303.12. After reviewing a videotape of the incident, Kartman summarized his investigation as follows:

> On the above date and time while working line supervisor, I Captain Kartman was radioed to report to first floor of South Housing. Upon entering unit one, I observed inmate Banks in the dayroom. Inmate was restrained and Officer Hanan was assisting him. The dayroom floor and tables had blood trailing into the laundry area. Inmate Banks was escorted to segregation at which time he stated that inmate Sabatke kept getting in his face and instigating him to fight. Inmate Banks openly admitted to this report writer that he went off on inmate Sabatke, hitting him in the head and face. Upon reviewing the video during the course of investigation the statement of inmate Banks is verified that at 10:44:13 inmates Banks and Sabatke began a conversation in the unit one dayroom at which time each inmate continues to point and make numerous hand gestures toward one another. At 10:44:34 inmate Banks shoves inmate Sabatke backwards causing inmate Sabatke to move forward and stand off face to face with Banks. At 10:44:44, inmate Banks with a closed fist, swings with his right hand and hits Sabatke in the face causing bodily injury. At 10:44:46 inmate Sabatke swings back at inmate Banks but does not hit him anywhere. 10:44:47 inmate Banks again strikes Sabatke in

3

> the face with a closed fist. Inmate Banks continues to strike inmate Sabatke until he is directed to stop by security staff. The injuries received during the altercation by inmate Sabatke were severe enough to require an emergency trip to Prairie du Chien Memorial Hospital, at which time it was discovered that inmate Sabatke received a broken nose during the altercation. Inmate Banks was escorted to segregation where he was placed in TLU status. At the time RN Booth conducted an initial medical assessment and determined that Banks would be seen the following day.

Dkt. #58, Skime Aff. dated May 26, 2009.

Although plaintiff stated that Sabatke stabbed him with a plastic fork, Kartman did not mention it in the conduct report. (The parties dispute Kartman's reason for the omission. ) After Kartman issued his report, someone else added a lesser included offense of fighting, § DOC 303.17. Kartman had no further personal involvement in plaintiff's disciplinary proceedings or in the resulting program review committee recommendation to transfer plaintiff to a more secure institution. Kartman issued Sabatke a conduct report for fighting.

Defendant Solomon was assigned to act as plaintiff's staff advocate at his disciplinary proceeding. Solomon believed that plaintiff appeared to understand the charge against him and the disciplinary proceedings. On November 24, 2008, plaintiff requested that two witnesses be present at his hearing: Darrick Junck and Keyonta Williams. As the security director's designee, defendant Skime reviewed plaintiff's request. He agreed to produce

4

Junck as a witness but denied plaintiff's request for Williams because Williams had been transferred to another institution on November 19, 2008.

Plaintiff's disciplinary hearing took place on November 25, 2008. Defendant Skime presided over the hearing as the hearing officer. During the hearing, both Solomon and Skime viewed the videotape of the fight, which shows that Sabatke had a plastic fork in his hand and had swung at plaintiff. Junck testified that plaintiff initially hit Sabatke with an open hand but then hit him several times with a closed fist. Plaintiff testified that he had a fight with Sabatke but did not hit him with a closed fist.

At the close of the hearing, defendant Skime informed plaintiff that he was going to find plaintiff guilty of fighting, a lesser included offense of battery, and not guilty of battery. Skime explained that under § DOC 303.03, he could find plaintiff guilty of the lesser included offense even though defendant Kartman had not charged him with that specific offense. In making his decision, defendant Skime relied on Kartman's incident description, plaintiff's disciplinary history, the videotape, pictures of plaintiff's abrasions, pictures of the blood on the floor and pictures of Sabatke's injuries. Skime set forth his reasons for finding plaintiff guilty of fighting as follows:

> Hearing officer believes it is more likely than not this inmate committed this act. Hearing Officer evaluated the evidence. Hearing Officer finds the staff member and the conduct report to be credible and relies on the statements in it as proof that inmate Banks was in an altercation with inmate Sabatke. Inmate Banks struck inmate Sabatke with a closed fist causing bodily injuries.

5

> Inmate Banks was the aggressor of this altercation by putting hands on inmate Sabatke and pushing Sabatke in a forceful manner away from him. Hearing Officer finds inmate's statement to be less credible and appears to be an attempt to avoid disciplinary action.

Dkt. #58, Skime Aff. dated May 26, 2009.

Skime imposed a penalty of 180 days in segregation and required plaintiff to pay restitution in the amount of half of the medical bills arising from the incident. Skime explained that he based the penalty on plaintiff's overall disciplinary record, the risks that plaintiff created of a serious disruption at the institution, serious injury to himself and another person, the cost of the resulting medical treatment, the fact that plaintiff was aware that he was committing an offense at the time and plaintiff's attitude toward the offense and the victim. Skime did not order an institutional transfer or security classification change. Solomon had no personal involvement in issuing plaintiff's conduct report, determining which witnesses plaintiff could call, finding plaintiff guilty of fighting, determining his punishment or transferring him to another institution.

    The videotape showed that plaintiff was the first one to make physical contact with Sabatke, plaintiff threw more punches than Sabatke and Sabatke suffered a more serious injury in the fight. Although Skime found Sabatke guilty of fighting, as well, he gave Sabatke only 60 days of disciplinary segregation, explaining that the difference in penalties was attributable to plaintiff's greater culpability.

Also on November 25, 2008, defendant Skime acted as the hearing officer at plaintiff's disciplinary hearing on a separate conduct report issued by correctional officer Jason Starkey for threats and disruptive conduct. Skime found plaintiff guilty of these charges and imposed a penalty of 120 days of disciplinary segregation.

### C. Program Review Proceeding

On December 9, 2008, defendants Hesselberg and Morrison served as members of the program review committee that held an early program review for plaintiff. According to the program review documents, plaintiff met with his social worker, Susan Fisher, before the hearing and told her that he wanted a transfer to Kettle Moraine Correctional Institution. (Although plaintiff admits that the documents state this, he denies that this actually happened or that the social worker prepared his case for the hearing pursuant to §§ DOC 302.17(1) and (2)).

Plaintiff appeared at the hearing and was informed that his early recall hearing was because of his conduct report for fighting. He was read the conduct report of the fight and told that he would be transferred to any maximum security institution with a bed. Plaintiff was permitted to speak at the hearing and stated that during the fight, he begged the other inmate to leave him alone but the inmate kept coming at him.

In making its decision, the committee considered plaintiff's conduct reports for fighting, threats and disruptive conduct. The committee took into consideration plaintiff's comments and requests and stated that "[b]ased on the above, the severity of the major crs received, institution adjustment & high risk rating; the Committee agrees to recommend max custody, temp placement at WSPF & transfer to any max security institution." Dkt. #60, Exhibit L at 3. On December 23, 2008, the Bureau of Offender Classification and Movement accepted the committee's recommendation, noting that the severity of the misconduct warranted custody elevation. On January 13, 2009, plaintiff was transferred to the Wisconsin Secure Program Facility for a temporary placement. On March 18, 2009, he was transferred to the Waupun Correctional Institution.

### D. Disputed Facts

Plaintiff avers that he overheard defendant Kartman use the term "niggers" when referring to black people and speak with Sabatke about calling plaintiff a "nigger." Kartman denies this and avers that the only time that he may have used that derogatory term was while reprimanding inmates for using it. Although plaintiff avers that he suffered two puncture wounds to his hand in the fight, Kartman avers that he observed only a small cut on plaintiff's palm after the fight and did not see a puncture wound on plaintiff's arm. The parties disagree whether plaintiff told Kartman that his hand injury was caused by Sabatke's

8

tooth when plaintiff struck him. Plaintiff avers that Kartman purposefully left out the fact that Sabatke stabbed plaintiff with a fork because he wanted to minimize the actions of a white inmate. Kartman avers that he did not mention this information because the video did not show that plaintiff was stabbed by the fork.

The parties dispute whether plaintiff told Hesselberg and Morrison that he wanted a transfer to the Kettle Moraine Correctional Institution and whether he was told in advance of his transfer to the Wisconsin Secure Program Facility.

OPINION

A. Due Process

1. Disciplinary proceedings

Plaintiff contends that he was denied procedural due process protections during his disciplinary hearing when he was not given notice of the charges against him and was not allowed to call inmate Williams as a witness. "A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007). It is questionable whether plaintiff's 120-day confinement in segregation at a maximum security institution constitutes a protected liberty interest.

9

Marion v. Columbia Correction Institution, 559 F.3d 693, 697-98 (7th Cir. 2009) ("[A] liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh.") (emphasis in original)). However, I need not resolve that issue because the undisputed facts show that no reasonable jury could find that the procedures plaintiff was afforded were constitutionally deficient. Thus, for purposes of this opinion, I assume that plaintiff had a protected liberty interest.

To provide a prisoner due process in disciplinary proceedings, the institution must give him:

> (1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

Scruggs, 485 F.3d at 939 (quoting Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir. 1992)).

Plaintiff argues that he was not given notice of the charge for which he was found guilty because the conduct report charged him with battery and he was found guilty of a different charge, fighting. But as defendant Skime explained to him at the hearing, although he was charged with battery, he could be found guilty of the lesser included offense of fighting pursuant to § DOC 303.03. By charging him with battery in the conduct report, the

10

institution gave plaintiff notice of that charge together with the lesser included charges, including fighting.

Plaintiff was given the opportunity to call witnesses and present documentary evidence at the disciplinary hearing. He asked for two witnesses. Defendant Skime approved his request for inmate Junck but denied his request for inmate Williams because Williams had been transferred to another institution. The exclusion of witness testimony at a disciplinary hearing does not violate a prisoner's due process rights when the testimony would be "irrelevant, repetitive or unnecessary," Piggie v. Cotton, 344 F.3d 674, 677 (7th Cir. 2003), and the inmate is provided a reason for the exclusion. Plaintiff has not presented any evidence that William's testimony was necessary or that it would have changed the outcome of his hearing. Id. at 678 (no due process violation where plaintiff failed to establish how inclusion of excluded witness would have aided his defense).

Plaintiff takes issue with the fact that defendant Skime was the only person to conduct his disciplinary hearing. However, apart from generally averring in response to defendants' proposed findings of fact that Skime is a racist and regularly punished African American inmates more severely than white inmates, plaintiff has submitted no evidence that Skime was biased. Further, § DOC 303.82(1) provides that one staff member may conduct the hearing if that staff member is a supervisor, which defendant Skime is. In any event, by itself, a violation of Department of Corrections rules does not rise to a due process violation. Boyd

11

v. Owen, 481 F.3d 520, 524 (7th Cir. 2007) ("[T]he requirement of due process is not defined by state rules and regulations, but is an independent determination."); see also Rujawitz v. Martin, 561 F.3d 685, 688 (7th Cir. 2009).

To the extent that plaintiff is arguing that he was denied due process because defendant Kartman lied on the conduct report, that argument fails. Plaintiff bases his assertion on the fact that Kartman omitted information about Sabatke having a plastic fork, which plaintiff considered to be a weapon. Even if this omission was intentional, it had no effect on the disciplinary hearing. Defendants Skime and Solomon viewed the videotape and concluded that Sabatke did have a plastic fork in his hand and had swung at plaintiff. Because this evidence was considered at plaintiff's hearing, plaintiff's did not suffer a violation of his constitutional right to due process as a result of Kartman's alleged lie. Further, Kartman did not testify or have any other personal involvement in plaintiff's hearing. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (liability under 42 U.S.C. § 1983 requires defendant's personal involvement in constitutional violation).

Finally, disciplinary decisions must be supported by at least "some evidence." Scruggs, 485 F.3d at 941. "This is a lenient standard, requiring no more than a modicum of evidence." Webb v. Anderson, 224 F.3d 649, 652 (7th Cir. 2000) (internal citations and quotations omitted). In this case, the conduct report, videotape, pictures and witness testimony all supported defendant Skime's decision and are sufficient to satisfy the lenient evidentiary

12

standard. (I note that although plaintiff accuses Junck of being a skinhead and lying at the hearing, he does not explain how he knew this and fails to adduce any evidence supporting this fact.) In sum, plaintiff has failed to adduce sufficient evidence from which a jury could conclude that he was denied procedural due process at his disciplinary proceeding.

2. Program review proceedings

There is no bright line test for determining what constitutes adequate process in the context of a transfer to a supermaximum prison. Ghashiyah v. Frank, 2007 WL 5497186, *1 (W.D. Wis. Aug. 14, 2007). The Supreme Court has held that at a minimum, prisoners "must receive notice of the factual basis leading to consideration for . . . placement [in the supermaximum facility] and a fair opportunity for rebuttal." Wilkinson v. Austin, 545 U.S. 209, 225-26 (2005). The Court stated that those two requirements "are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations . . . requiring officials to provide a brief summary of the factual basis for the classification review and allowing the inmate a rebuttal opportunity safeguards against the inmate's being mistaken for another or singled out for insufficient reason." The Court of Appeals for the Seventh Circuit has suggested that so long as a "prisoner [i]s given sufficient notice of the reasons for his transfer to afford meaningful opportunity to challenge his placement," his placement in

13

such an institution will satisfy due process under Wilkinson. Westefer v. Snyder, 422 F.3d 570, 590 (7th Cir. 2005).

In this case, it is undisputed that plaintiff was given the reasons for his transfer, at least on the date of the hearing. (Plaintiff denies receiving advance notice of the reasons for the transfer from the social worker.). He was given the opportunity to appear at the hearing and make a statement to rebut the charges against him. Accordingly, he was afforded all of the due process protections to which he was entitled.

### B. Equal Protection

To prevail on his equal protection claim, plaintiff must prove that he suffered a discriminatory effect, that is, he must show that he was treated differently from similarly situated individuals in the unprotected class. Chavez v. Illinois State Police, 251 F.3d 612, 636 (7th Cir. 2001). Plaintiff must also show that defendants acted with a discriminatory purpose. Billings v. Madison Metropolitan School District, 259 F.3d 807, 812 (7th Cir. 2001). Consequently, a plaintiff cannot rely solely on different treatment as evidence of unconstitutional conduct, but rather must demonstrate that the defendant treated him differently because of his race. McNabola v. Chicago Transit Authority, 10 F. 3d 301, 513 (7th Cir. 1993).

14

Plaintiff contends that defendant Kartman discriminated against him because of his race when he gave him a conduct report for fighting. In support, he cites the fact that Kartman left out of the conduct report the fact that Sabatke, the white inmate, was armed with a plastic fork. By itself, a conduct report that favored Sabatke does not raise an implication of racial discrimination. Jackson v. Runaas, Case No. 07-C-773-bbc, 2008 WL 5115906, *3 (W.D. Wis. Dec. 4, 2008). Although it may seem unfair to petitioner, prison officials are not required to give all prisoners identical treatment. In this case, Kartman states that he did not record the fact that Sabatke had a plastic fork because he did not see it on the video and did not see any puncture wounds on plaintiff. Although plaintiff generally asserts that Kartman is lying, he fails to show that Kartman's reason is a pretext for race discrimination.

The only evidence that plaintiff presents in support of his claim that defendant Kartman discriminated against him because of his race is that he overheard Kartman use the term "nigger" to refer to African Americans. Kartman responds that the only time he would have used that derogatory term would have been to tell inmates not to use it. In fact, elsewhere in his affidavit, plaintiff states that he heard Kartman tell inmate Sabatke not to use the term. Plaintiff fails to describe when or in what context Kartman made the remark or how Kartman's use of the derogatory term relates in any way to his writing of the conduct report. The Court of Appeals for the Seventh Circuit has repeatedly held that "isolated comments that

15

are no more than 'stray remarks' . . . are insufficient to establish that a particular decision was motivated by discriminatory animus." Merillat v. Metal Spinners, Inc., 470 F.3d 685, 694 (7th Cir. 2006). A remark can imply discrimination only when it "was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse . . . action." Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 491 (7th Cir. 2007); see also Steinhauer v. DeGolier, 359 F.3d 481, 487-88 (7th Cir. 2004) (concluding that decision maker's comment not made to plaintiff, made in passing and unrelated to adverse decision was not sufficient evidence of discriminatory intent). Without more, plaintiff cannot establish that Kartman purposely treated him differently because of his race.

Next, plaintiff contends that defendant Skime and Solomon discriminated against him because of his race when they gave him a harsher penalty than Sabatke. However, it is undisputed that defendant Solomon was not personally involved in the imposition of the penalty. Gentry, 65 F.3d at 561. Skime avers that the penalty he imposed was not motivated by plaintiff's race and gave the following reasons for plaintiff's penalty: plaintiff's overall disciplinary record; his risk of causing a serious disruption at the institution; the risk he created of serious injury to himself and another person; the cost of resulting medical treatment; plaintiff's awareness that he was committing an offense; and plaintiff's attitude toward the offense and the victim. Further, Skime explained that he gave Sabatke a lesser penalty because the videotape showed that plaintiff was the first one to make physical contact

16

with Sabatke, plaintiff threw more punches than Sabatke and Sabatke suffered a more serious injury in the fight.

Although plaintiff admits that the videotape shows what Skime said it did, he nonetheless avers that Skime is a racist because Skime has given every black inmate who has had a fight with a white inmate more time in segregation and in most cases, sends only the black inmate to a supermaximum security institution. However, as defendants point out, the only evidence that plaintiff produced in support of his accusation is the affidavit of Fred Shabazz, a black inmate, who avers that although he was attacked by white inmates, only he received a conduct report and time in segregation. The self-serving and conclusory testimony of one inmate is not enough to rebut the veracity of Skime's stated reasons for treating Sabatke differently. Duncan v. Fleetwood Motor Homes of Indiana, Inc., 518 F.3d 486, 492 (7th Cir. 2008 (honesty of decision maker's statement often revealed by analyzing reasonableness; the more objectively reasonable the explanation, the more likely it honestly motivated the challenged action). Without more detail about the incident involving Shabazz and corroborating evidence, I cannot find that Shabazz was similarly situated. To be similarly situated, the individual at least must have "'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his] conduct or the [decision maker's] treatment'" of him. Snipes v. Illinois Department of Corrections, 291 F.3d 460, 463 (7th Cir. 2002) (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir.

17

2000)); see also Grayson v.. O'Neill, 308 F.3d 808, 819 (7th Cir. 2002) (to meet burden, plaintiff must demonstrate that individual is directly comparable in all material respects). Plaintiff has not made this showing.

Finally, plaintiff alleges that defendants Hesselberg and Morrison discriminated against him because of his race when they transferred him to a maximum security prison. However, both Hesselberg and Morrison aver that they based their decision on the severity of plaintiff's two recent conduct reports, his institutional adjustment and his high risk rating. Plaintiff presents no evidence that Hesselberg or Morrison were motivated by his race, alleging only that after watching the videotape, they should have known that Kartman and Skime discriminated against him. Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Additionally, plaintiff has not shown that he was treated differently from similarly situated white inmates. Accordingly, defendants are entitled to judgment in their favor on plaintiff's equal protection claims.

ORDER

IT IS ORDERED that the motion for summary judgment, dkt. #128, filed by defendants Captain Kartman, Lieutenant R. Skime, K. Solomon, Captain Hesselberg and C.

Morrison is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close the case.

Entered this 16th day of March, 2010.

                                            BY THE COURT:

                                            /s/

                                            _____
                                            BARBARA B. CRABB
                                            District Judge